Good morning everyone. And we'll call our case this morning Craig Sanford, Mary Jo Sanford v. Bracewell and Julie Anne, Mr. Buckley. Thank you. May it please the court. My name is Peter Buckley of Fox Rothschild. I have the privilege of representing Appellant Bracewell and Julie Anne in this appeal. I'm joined at council table by my partner Abe Rich. I'd like to reserve five minutes for rebuttal. That request will be granted. Thank you, Your Honor. This appeal involves the court's Guadagni decision. There, the court clarified the standards that apply to motions to stay or compel arbitration, including when the trial court should rule under 12b-6 and when it should apply the summary judgment standard. Wasn't the district court, or explain why you think the district court was wrong when it found a lack of clarity between the assertion and the pleading? That is, essentially we are a client by way of the agreement and the agreement itself attached to it doesn't define to include Mrs. Sanford. So why isn't that enough lack of clarity for the district court to have gone outside the pleading? Well, in the first instance, the allegation and the pleading that Mrs. Sanford, who is the subject of this appeal, became a client by way of the engagement letter is a judicial admission. She could have amended her pleading and said later that she was wrong and that what she meant to say... But is that clear when at the same time the complaint incorporates the engagement letter and the engagement letter it says the engagement is strictly between Mr. Sanford and doesn't apply to, it specifically says it doesn't apply to a spouse. Right. So doesn't that create right on its face unclarity? I think the district court determined that that created an issue of lack of clarity on the issue of whether she was a client. And I think that that question is actually one step to the right of the question that we should be addressing here, which is the question asked by Gridotti, which is not whether someone was a party to the arbitration agreement, but whether they should be bound by it. And so that case focuses not on whether there was a client relationship or whether they were a party to the contract, but as applied here, whether there was an agreement to arbitrate, whether there was a meeting of the minds, which clearly there was with respect to Mr. Stanford. And then the second question, whether Mrs. Sanford is a non-signatory to that agreement who knowingly embraces it by filing a lawsuit. Well, when you say knowingly embraces it, I'm not sure that the answer you've given grapples directly with the problem created by the wording of the engagement letter from your client that Judge Fischer has put in front of you. Nobody else crafted that letter but your client. It says on its face, this doesn't have to do with your spouse. This has to do with you. It names Mr. Sanford. It doesn't name Mrs. Sanford. Your client is a law firm. It knows how to craft what it wants to craft. Why should the decisions it made about who it said was bound by that agreement not at least raise a factual issue which would allow one under Guidati to go to the Rule 56 standard? I'm not saying that even if you reach the Rule 56 standard that she should nevertheless be bound. I think under the Rule 56 standard, when you're considering the facts, I think the facts are clear that she is equitably a stop from denying that she's bound by the arbitration agreement because she's suing. She attached it to her complaint which she verified. She said she is a client by way of the engagement letter. She's knowingly embracing it. That knowingly embrace is not just with respect to the complaint that was filed but it's also with respect to the services. She sold the business. This was her money as well. If the firm was successful in investigating and recovering money, she would certainly have benefited from that. That's a big if. I take part of their argument to be when you say she embraced the benefit of the contract, they take their central argument or one of their central arguments to be there was no benefit to the contract. That's exactly why we're suing you. That's sort of putting the rabbit in the hat in that certainly the Sanfords don't contend that there was nothing at all done. They contend that nothing good was done, that in fact it was malpractice. There was no benefit because what happened was bad. Not that nothing happened but that what happened was actively unhelpful. That would sort of defeat the purpose of an arbitration agreement if the arbitration agreement turned upon whether the work was done was negligent or not. That's the issue to be decided in the arbitration. This is an interesting case from a lot of perspectives. Does the Pennsylvania Supreme Court say anything about at this stage, have they said anything about the obligation that attorneys who are practicing in Pennsylvania have to inform clients about the presence of an arbitration agreement and what it means? No, Your Honor. This was addressed in the district court and there's been some discussion by, for example, the Philadelphia Bar Association, but there's certainly not the sort of pronouncement about the conscionability or when these agreements should be enforced or not. Frankly, I think that that issue is really not the subject of this appeal. I don't think it is either, except you have this area of what did she embrace. Let's go to the specifics here. You cite both judicial admission and equitable estoppel. If we conclude that the documents are not clear, how can you prevail on the doctrine of equitable estoppel? The doctrine of equitable estoppel applies to a non-signatory here, Mrs. Sanford, and the question of whether she should be bound by an arbitration agreement that she knowingly embraces. Even if the court does not find that the pleadings were judicial admission, the court can nevertheless find that Mrs. Sanford knowingly embraced the arbitration agreement by accepting the benefits of the work that the firm was doing on her behalf and on behalf of her husband to recover their money. What did she really do other than write the check and deliver the $50,000? That raises another question, Your Honor, which is whether that is sufficient to create an implied attorney-client relationship, and I think it is not. I think the district court erred for two important reasons. One, the facts are, as you say, very simple. Mr. Stockwell came over to the House, he said, for some other purpose. They happened to discuss the background of the case, and he left with a check. Her own actions demonstrate that she did not see that as an attorney-client relationship. She never followed up. So your intention, I gather, is if we were to reverse the district court and send this case to arbitration, because you are saying she embraced the contract, that you would go before the arbitrator and say she was not the client. That is what your plan, I would assume that is the plan, right? Because you are just describing that she really is not a client. I actually do not think it matters whether she was a client or not. I mean, this is sort of the odd thing about this case. The Samford's are trying to create two proceedings over the same claim. It is not a divisible claim or a separate claim, as I point out in the brief, where you have a husband, for example, who has got a personal injury and a wife who has got a loss of consortium claim where there is some way to separate the two. So if you go before the arbitrator, because you are saying she embraced the contract by saying this was a breach of contract claim, relied on the written agreement, the written agreement has an arbitration clause, therefore she must be bound by its fulsomeness. She has to go to arbitration. The case goes to arbitration with her husband. When you get before the arbitrator, if we were to suggest that that is where you needed to be, are you saying then you are not going to argue she is not a client?  Again, I do not think the case is any different, really, whether she is a client or not. Well, a lot of what you are talking about here is estoppel. So you are being asked straight up, is your position that she is a client or not? They say, I think it is on page 7 of their brief, I had to go back and look, that you still deny she is a client of the firm. Is that true? Do you deny that she was a client of your firm? Excuse me, your client's firm? Right. I think that has been the position that we have taken so far, and I think that it is a position that is consistent with the engagement letter. Well, how strange is it then for you to come in here and say she is bound by the arbitration agreement, do not let her run away from embracing it, and at the same time say she is not a client? Because she is not engaged by it, we are not engaged by them, do not let us be bound by that, oh yeah, but make her go to arbitration because she is bound by that. Aren't you doing exactly what you are accusing the other side of, taking fundamentally inconsistent positions in front of this court? I do not think so. I think the position that I am taking before this court is that Mrs. Sanford is a non-signatory to the agreement, who has filed a lawsuit that she verified, where she says, I am suing for breach of this contract. I think that as a non-signatory, she is bound by the terms of that agreement, including the arbitration provision. As a non-signatory, she is bound because she is somehow getting a benefit, so she has to arbitrate, even though you can say you are not our client. That is the position you have. She has the benefits, but she is not a client. She has to arbitrate, but she is not a client. As Mrs. Sanford points out in her papers at the trial court, she claims to be a third-party beneficiary of that client relationship. Again, if there was some difference between whether Mrs. Sanford had a separate pot of money that she was suing to recover, or she had some divisible right, like a loss of consortium claim, I think it may matter. But again, I think we have become distracted by this issue about whether she is a client or not, and I think the real issue under Gwadadi is whether there was a meeting of the minds on the agreement to arbitrate, which clearly there was with Mr. Sanford. And then the second question, which is separate, it is not one question, it is two questions. Was there a meeting of the minds? Yes. And then, is Mrs. Sanford a non-signatory bound by that meeting of the minds because she is knowingly embraced? I think that answer is yes as well. This doesn't really make any difference to our decision, which we have to make, but what is the status of the arbitration? It hasn't moved forward. The parties have agreed. You've agreed. It's not stayed by this appeal. It wouldn't necessarily be stayed by this appeal. No. So it has not gone forward. Correct. That sort of presents one of the practical implications of this decision is that to the extent that the district court's decision stands, we would almost be in a situation where the same exact claim is being litigated in two different forms, giving rise to potentially inconsistent results. If that happened, would that be a consequence of your client's own decision to say actively in its engagement letter, we're only representing you, Mr. Sanford. We are not representing your spouse. This is not an engagement with respect to your spouse. If you end up in two separate places, who set that up? You or the other side? Well, certainly the firm drafted its engagement letter, Your Honor, but I don't think that the firm's engagement letter has the power to sort of divide a claim that is indivisible in two. And it seems to me that regardless of how many places you go, wherever we might send you, there's still only one claim. There can still only be one recovery. Correct. And certainly Mr. Sanford, who took the lead in contacting Mr. Stockwell and took the lead with interacting with the Bracewell firm, took the lead with Mr. Smith, who was alleged to have taken this money, he was leading the charge on all this. And so for Mrs. Sanford then to say somehow that based on this one conversation she had with Mr. Stockwell, who again I want to emphasize, and this is another area where I think we have to... Mr. Buckett, we'll have you back on rebuttal. Thank you. Mr. Haynes. Mr. Haynes, why don't we start right there. Good morning, Your Honor. Good morning. I want to explain to you that I have my manifesto on arbitration agreements in lawyer contracts, but I will resist the temptation to read it and be respectful of your question before I argue my case. And I should have let you introduce yourself. Excuse me. But why don't you start right there with this point. It seems to me, and I'm trying to get my arms around where this goes, there's still only one claim. There's still only one claim. There's one claim. There's a claim against Bracewell Giuliani and there's only going to be one recovery. There's only going to be one recovery. No matter how many venues you're allowed to go through, there's only going to be one recovery. And there's only going to be one proceeding. So, in light of that, and in light of the fact that, you know, you skillfully filed a claim in common pleas court, you filed one complaint, you based it on the engagement letter for both Mr. and Mrs. Sanford, okay, why should there be two venues? There shouldn't, nor will there be, and I've said that three times. So you're letting us know, you're communicating to us, there's going to be one place, so we decided. And have you decided where that place is going to be? There's a simple answer to your honest question. If this court were to overrule my client, Judge Slomski, and send me to arbitration, that's where we're going, there's one proceeding. If this court were to rule, no, no, no, Mrs. Sanford gets her day in court in terms of whether she is or is not a client. If the jury rules she's a client, guess what we're going to do with the arbitration claim that sits up in New York on behalf of Bracewell and Giuliani? We're going to dismiss that claim and proceed as if Mrs. You're going to do what to that claim? Pardon me? You said, guess what we're going to do with that claim that's in arbitration in New York? What are you going to do with that claim? Well, what I mean by that, maybe I was a little obtuse and I apologize, Your Honor. If this court, If we were to affirm the district court, what would happen to the arbitration? If we were to affirm the district court and say, there's a question of fact, as to Mrs. Then I believe the practical solution is to have the trial with respect to whether or not Mrs. Whether or not Mrs. Sanford is or is not a client. If the jury determines You may say that that's the practical solution, but that doesn't prevent the arbitration against Mr. Sanford from going forward, right? It does not prevent the arbitration from going forward. So you've got the problem with two venues, right? We will have the opportunity to challenge that arbitration as we have from the outset. On what basis? When you say we have the opportunity to challenge that arbitration, there's no question, even if we affirm, Mr. Sanford's bound and the arbitration can go forward. Well, with all due respect to If that's your single claim and the arbitration goes forward, let me ask it this way. On what basis could you challenge the arbitration? On what basis could you say, stop that? What would be your legal basis for trying to stop that? You are inviting me to launch into my diatribe about arbitrations and the appropriateness of arbitrations. No, I'm really not, Mr. Haynes. I'm not asking for a policy consideration or these are a bad idea. I'm just asking a straightforward question. If Mr. Sanford is bound to arbitrate in New York and nobody seems to disagree that he is bound to arbitrate in New York, if we do what you would like, how does this end up not being a single claim being litigated in two separate fora just as Mr. Buckley has described? It may indeed end up that way, but then if you do that, you are taking the legal principles that underlie the decision that Judge Slomski based his opinion on and throwing them to the wind and saying, we're not going to decide this case on the law, we're going to decide this case on the practical outcome. I don't think that's a basis on which his court ought to be reversing Judge Slomski. Judge Slomski, how about this legal principle that your client chose to assert in the complaint filed, they said, and you don't even need to quote it to you, it's paragraph 25 of the complaint, it's all over the briefs, that the Sanfords entered into the relationship, quote, by way of an engagement agreement. That's a statement of fact about an attorney-client relationship and how it was established, is it not? First of all, I don't think it's binding on the client. How could it not be? This was a verified complaint. Pardon me? It was a verified complaint, meaning the client affirmed to the facts alleged. I don't think that means it's not rebuttable based on other facts that develop at the time. I don't think any admission is binding on the party. It's a fact that should be considered or may be considered by the finder of fact that she has made that admission, but there's nothing that precludes her from contradicting herself on that. Jordan, if this is viewed as a Rule 12b-6 motion, where the district court would look at the pleading, and that's one of our first questions is, can we go beyond the pleading? If the district court heard by going outside the pleading, your client is stuck with that statement of rules in paragraph 25, and doesn't that in itself mean she's a stop from distancing herself from that very agreement? Judge, if you conclude that Judge Slonsky was wrong, then you will reverse. But why was that correct to go beyond the pleading in light of the clear paragraph that Judge Jordan just read? Why was he permitted to go beyond that? Because Judge Slonsky determined that there were contradictory facts with respect to the engagement letter. One of the things that is in the papers before your honor, but not clearly articulated, although it was a fact in front of Judge Slonsky, is this engagement letter was sent to the Sanfords in September. It was not signed until December, literally the same month that this fell apart, this engagement fell apart. Accepting that, let's accept that everything that you've said on your side of the ledger is accurate and true. We have a logical conundrum, okay? And this is what, I don't want to put words in Judge Schwartz's mouth, but I believe she's asking this and I'm really interested to hear this. Guidotti seems to say, pretty sure it says, that you've got, if you have something clear on the pleadings, don't go beyond the pleadings in figuring out whether a matter is arbitrable. Stick with 12b-6. Your client's pleading says they entered into the attorney-client relationship by way of the engagement agreement. That seems very clear. So if that's clear, then doesn't Guidotti dictate, not suggest, but dictate that you're bound by the 12b-6 standard? And if that's true, how do we ever get to any of these other facts that your client wants to get in front of us and which Judge Slonsky took into account? That's the arc of reasoning I understand the opponent is putting in front of us. You've got to tell us how that's wrong. Well, I think that you and my opponents are now putting far too much weight on that particular part of the pleading. It is by way of, not as a result of, that is planned. One can, and I believe legitimately, argue that that complaint, despite an effort to change the language in the complaint, does not say specifically that Mrs. Sanford was a signatory in the agreement, because she was not. And as you pointed out, the agreement specifically excludes her. And so it, in itself, contradicts that allegation. But the breach of contract claim itself relies on the engagement letter itself. That is the basis upon which she sought relief. Based on the pleading. Based upon the pleading, that's the contract she claims was breached. That's what the pleading says. So how can we ignore the terms? Because it's not just a breach of contract claim. It's a negligence claim as well. Professional malpractice is a negligence claim. I'm aware of that, but you have a breach of contract claim. And take it away if you choose to do that. You're the drafter, you're pleading. I understand that, and I've regretted it from the day that it was crafted in the way that it was written in the way that it was written. In fairness to you, though, the spirit of the way you drafted that complaint, or whoever drafted it, is consistent with your position before the district court when you objected to your adversary's characterization. She wasn't a client. She was a third-party beneficiary. So the tenor of your complaint, together with your position on paper before the district court, before there was any kind of hearing, actually are consistent. You said, wait a minute, she's a beneficiary of this relationship, of this contract. We should be able to sue. And so I don't think there's an inconsistency there. I think from your point of view, maybe the trouble is you've embraced her status vis-a-vis that relationship and that agreement, and you have to be bound by its terms. No? I cannot argue my way out of language that you have interpreted differently. I'm sorry. I can't do that. How else do we interpret, Mr. Haynes? We're only asking that. How else? If you point us to a way out of the 12B6 box, which it looks like paragraph 25 pleads the plaintiff, Mrs. Sanford, into at first blush, then maybe you get to Rule 56, and Judge Slomski's position is entirely supportable. But how do you get out of that? I don't get out of boxes, Judge. If you put me in a box, I cannot get out. How do you get to Rule 56? Judge Slomski did that very simply by basing it on the evidence that was presented before him and what he heard. Let me suggest this. I think that Judge Slomski, his analysis was clear. He mentions equitable estoppel, I think, around page 21 of his opinion, but then sort of never analyzes what it means to the 12B6 assessment on this case. If there's anything which I think causes you to stay in a box, it's the fact that you cannot perhaps, you have a difficult time explaining away why equitable estoppel shouldn't apply up front. You have an opportunity to hear it. Tell us why it shouldn't apply. I personally don't think it's that clear. I don't think it's that clear that it applies. Well, I don't think that, I don't think I can, beyond what I've said. If you see it as white and I see it as black, I've suggested to you, and I think it's correct, that we are not bound by that admission, particularly in light of the testimony that Mrs. Sanford offered. And I don't know that it matters how you get to that stage. Judge Slomski had hearings, listened to testimony, heard evidence, and came to a conclusion that there's a factual dispute here. Now, if you put your blinders on and say, I cannot look at that factual evidence because I am, I have to embrace the pleadings and accept them as true and cannot consider anything else, it will ring the door in a box. Well, is that not what Guidotti dictates? Is there another way to interpret Guidotti? Because you're saying, you're saying, if you put the blinders on, but doesn't Guidotti in fact say, if you're clear on the pleadings, don't go beyond the pleadings? And Judge Slomski said he was not clear on the pleadings. And that was his conclusion, and that's his decision. And I hope that I've made clear that I'm not clear on the pleadings either. Again, if you say it's clear, I lose. And I'm... How else do we interpret paragraph 25? Give us a legal argument for how to view that as something less than a judicial admission that should be binding. This voice is trying to bail me out here. Sometimes that's probably difficult. As you and I have experienced in the past, Your Honor. I'll make this argument because it was suggested to me and because you all are really giving me a hard time this morning. We're not giving you a hard time. This is as clear as the nose in your face, Judge. An arbitration clause in a fee agreement between a lawyer and a client is unconscionable. End of subject shouldn't exist. Now, you all don't agree with that. We need to make that clear. Is that question before us? I like you to adopt that question and look at it very carefully because with all due respect to your court and all due respect to Congress, you all are so far off the mark to suggest that arbitration is simpler and cheaper to people like the Sanfords. It is ridiculous. The Sanfords, if they have to go to arbitration, will spend thousands of dollars to arbitrate this will charge them money. And to say that's fair and equitable, to say that a mechanic who's in a lawyer's office, who signs an agreement to be represented, who knows not what arbitration is, who has no appreciation of that, is somehow on an equal footing with lawyers, is ridiculous. To say you are a client, while you're here to hire me, we recommend that you go down the street and hire another lawyer to determine whether you would hire us. It's ridiculous. Well, you asked me if it was before your honor. The question is, is it before us? I understand that it's not. Except for the fact that you've now got an arbitration clause in a fee agreement which requires careful scrutiny. It's looked at in a different way than other fee agreements. And for that reason, I think we've got to allow the door to be opened. Let me ask you one question. Your red light's on. And let me ask you one question, because I think maybe this gets to the crux of what you're saying. Judge Slomski concluded that the pleadings were unclear. And he analyzed this under the Rule 56 standard. And based on the limited discovery and the testimony he presented, he said there are genuine issues of material fact. And he said that Mrs. Sanford is entitled to a trial on whether or not she has to go to arbitration. That's what he said. And we're here because Bracewell has appealed from that ruling. On the record, as it's before us, can they go back to the initial question in light of the additional testimony and say this should be a 12B6 and you should ignore everything that came along thereafter in the testimony? Obviously, my position is that you can't do that. The horse is out of the barn. Judge Slomski chose to allow that testimony in order to clarify the very issues that were before him. We're forced to look at that entire record in making this decision? Yes, sir. Okay. All right. Mr. Buckley. Thank you, Your Honor. I want to start by addressing this concept of the box that Mr. Haynes and the Sanfords find themselves in. And the question was, was there a way out of the box? And I think the answer was yes. They could have amended their pleading. There would have been a persuasive force to the allegation in the then original complaint, in paragraph 25, that would have been withdrawn. But that would have taken away the judicial admission argument. And I think that the Guadagni opinion expresses a desire for economy and efficiency in resolving these issues. And so we should have resolved them at the district court by saying 12b-6 says there's an admission. We're not going past that. If they had amended and withdrawn that admission, which they had opportunity to do, it was discussed. The record in the district court was closed after a number of hearings. The issue of amendment was discussed on the record. We'd be in a different situation. All right. Mr. Buckley, if we conclude that the pleadings are not clear enough that they're bound by a judicial admission, that takes us into your equitable estoppel argument. And I want to repeat my question that I asked you before, but I want to add on to it. In light of what Mr. Haynes has argued, can we ignore what's in the record, which creates a further lack of clarity as to what Mrs. Sanford's status is, at least as a client, and how she's bound to proceed? Can we ignore that? I want to make sure I understand your question. Are you saying can you go back to the 12b-6 standard? Exactly. Well, I think Judge Slomski did. He heard all of the evidence, and on Mr. Sanford, he decided on 12b-6. So I think the answer is you can rule on 12b-6. And I think what Judge Slomski was doing, frankly, was because Bodatti was a new decision, and he said this in his opinion, he was sort of erring on the side of caution to see, let's see what the evidence says. But what he did is then he created an inconsistency, and I think created an issue that could have been avoided had he forced the Sanfords to stick with their complaint or amend. But if we do reach the Rule 56 standard, I think there's really two important arguments. One is the equitable estoppel argument, which frankly is something that I think can be done on Rule 12b-6 as well, because she embraces it in her complaint. She embraces the agreement containing the arbitration provision in her complaint. But if you look at the Rule 56 standard, and we address the issue about whether there was an implied attorney-client relationship here based upon this limited interaction, I just want to point out that Judge Slomski said that it was important that this was in the professional competence of Mr. Stockwell, because really any lawyer is competent to advise about a promissory note. That's not the issue that they were asked to look at. Everybody understood that the promissory note created trouble. It was the investigation. And to say that a government relations lawyer from Dubai is qualified to track down money and investigate where these funds went in the United States, I think is clearly outside... He may be more qualified than a contract lawyer in New York. Well, I don't know that that's a very valid argument. At the end of the day, is there any traction in Mr. Haynes' position that the kind of arbitration agreement here should bear on how we view the strength or the binding character of a judicial admission? In other words, that there's something distinctly inequitable and distasteful about allowing lawyers to say in an engagement letter, we don't represent you, you don't have anything to do with this, only the signer does, and then have the lawyers come into court and say, hey, forget that stuff we crafted, make or live with it. How do you respond, speaking of equitable estoppel, how do you respond to that? Well, number one, I just want to make something clear from the record, which is that this was not an arbitration clause that was buried in a 50-page document. This was clearly spelled out and the rules were provided... Assume it was paragraph number one in bold. I don't hear anybody here saying it was hidden in the fine print. The nature of the argument that's being put to us by Mr. Haynes on an equitable basis, whether it's... that's why I started by saying, does it have any traction at all? Whether it's... it just is unfair to let lawyers say, here's the contract, you're not part of it, and then when they're caught in a lawsuit say, oh yeah, but you're in it for arbitration purposes. I don't think so. I think that that whole line of cases that talks about non-signatories being bound equitably...